# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHLEEN MELISSA GOLDEN, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| *versus* | § CIVIL ACTION NO. 5:12-665 |
| | § |
| CAROLYN W. COLVIN, | § |
| Acting Commissioner of | § |
| Social Security, | § |
| | § |
| *Defendant*. | § |

## REPORT AND RECOMMENDATION

Cathleen Melissa Golden ("Golden") seeks review of an adverse decision on her application for disability insurance benefits under the Social Security Act.

### I. Background

Golden seeks social security disability insurance benefits for disability due to depressive disorder, anxiety disorder, carpal tunnel syndrome, obesity, syncope, and diabetes mellitus. (T. 17).[1] Administrative law judge, James E. Dombeck ("ALJ Dombeck"), denied Golden's application. (T. 15-24). The Appeals Council declined review; Golden timely instituted this proceeding. (Dkt. No. 1).

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of*

---

[1] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

*Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

## II. Commissioner's Decision

ALJ Dombeck found that all of the allegedly disabling conditions listed above, except diabetes, constitute medically determinable impairments that are "severe" because they cause more than minimal functional limitations. (T. 17). He determined, however, that none of these impairments, considered singly or in combination with Golden's other impairments, is of such severity as to meet a Commissioner's listing of presumptively disabling impairments. (T. 18-20). Rather, Golden retains functional capacity to perform work activities at a "light" exertional level notwithstanding her physical impairments. (T. 20). Golden's mental impairments limit her to work involving "rote simple tasks." (*Id.*).

ALJ Dombeck further found that Golden's physical and mental residual functional capacities allow her to perform her past relevant work as a "grommet machine operator," a light exertional and unskilled job. (T. 22). ALJ Dombeck determined, alternatively, that even were her impairments to prevent performance of past relevant work, Golden still is not disabled. (T. 23). ALJ Dombeck consulted Medical-Vocational Guidelines[2] to determine whether a person similarly situated to Golden can perform other available work. (*Id.*).

---

[2] The Medical-Vocational Guidelines are a matrix of general findings—established by rule—as to whether work exists in the national economy that a person can perform. They "take into account a claimant's RFC, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

Using the guidelines "as a framework for decisionmaking," he concluded that Rule 202.13 therein makes appropriate a finding of "not disabled." (*Id*.).

Claimants who can perform past relevant work are "not disabled." *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). Similarly, claimants who cannot perform past relevant work because of their impairments, but whose residual functional capacity permits them to perform alternative work available in the national economy are not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Accordingly Golden's application for benefits was denied. (T. 23).

### III. Points of Alleged Error

Golden's brief proffers for review four distinct errors:

1. the residual functional capacity finding is the result of legal error and is not supported by substantial evidence;

2. the ALJ did not apply the appropriate legal standards in assessing Golden's credibility;

3. the ALJ erred when he found Golden was capable of her past relevant work as a grommet machine operator; and

4. the ALJ's alternative finding that Golden was not disabled at Step 5 was not supported by substantial evidence; he should have consulted a vocational expert.

(Dkt. No. 12, pp. 1, 9-22). Under this district's practice,[3] the parties marshal their arguments on these issues through competing briefs.

### IV. Discussion

All proffered errors advocate a flawed residual functional capacity determination. Golden asserts that ALJ Dombeck failed to apply correct

---

[3] *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

principles of law when assessing her *mental* residual functional capacity (point no. 1, *supra*) and also when assessing her *physical* residual functional capacity (point no. 2, *supra*).  Remaining points argue in part that the erroneous residual functional capacity determination tainted subsequent findings regarding Golden's capacity to perform past relevant work (point no. 3, *supra*) and other available work (point no. 4, *supra*).

Golden's arguments are persuasive on several points.  To reach a proper disposition, however, the court must discuss and analyze only one.

A.   *Residual Functional Capacity*

Administrative law judges utilize a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

Residual functional capacity refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain.  *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis.

More often than not, a claimant's "residual functional capacity" is a crucial finding. Oddly, it is not one of the five enumerated sequential steps. Rather, administrative law judges quietly assess it *after* Step 3 of sequential evaluation (dealing with whether impairments are presumptively disabling), but *before* Steps 4 and 5 (dealing with other issues). In context, therefore, residual functional capacity assessment is an important predicate finding relevant to issues addressed at both Steps 4 and 5.

When mental impairments are present, determinations of functional limitations stemming therefrom are accomplished in the aftermath of application of a "special technique" set out in 20 C.F.R. § 404.1520a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This complex and abstruse technique helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe.[4] It also aids

---

[4] An administrative law judge "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [those] findings." 20 C.F.R. § 404.1520a(b)(1). Next, the administrative law judge must assess the degree to which the claimant's impairment functionally limits his or her "ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*, at § 404.1520a(c)(2). To complete this assessment, the technique requires the administrative law judge to "rate[s] the degree of [the claimant's] functional limitation" in four functional areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." *Id.*, at § 404.1520a(c)(3).

For the first three functional areas, the administrative judge provides a rating of either "[n]one, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). For the fourth category—episodes of decompensation—the administrative judge provides a rating on a four-point scale: "[n]one, one or two, three, four or more." *Id.*

The administrative law judge uses these ratings to determine the severity of the claimant's alleged mental impairment. 20 C.F.R. § 404.1520a(d). The administrative law judge generally will conclude that the claimant's mental impairment is not severe if the claimant receives a rating of "none" or "mild" in each of the first three areas and "none" in the fourth area. *Id.*, at § 404.1520a(d)(1); *Kohler*, 546 F.3d at 266.

determinations of whether severe mental impairments meet or are equivalent in severity to any presumptively disabling mental disorder as set forth in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520a(d)(2).[5]

When applying this technique, *functional effects* of mental impairments are factored into both Step 2 and Step 3 determinations. Consequently, the technique relates to, but is entirely separate and analytically distinct from, a *subsequent* determination of mental *residual functional capacity*. Step 2 and Step 3 findings regarding functional limitations stemming from mental impairments, while pertinent, do not suffice as a mental residual functional capacity determination. An administrative law judge "cannot simply rely on the limitations articulated in the severity analysis at steps two and three of the sequential analysis, but must instead provide '*a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments.*' " *Ladue v. Astrue*, No. 3:12–cv–600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y. Feb. 1, 2013) (quoting SSR 96–8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996)) (emphasis added)).

---

[5] This is done "by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the *criteria* of the appropriate listed mental disorder." 20 C.F.R. § 404.1520a(d)(2)(emphasis added). For each listed disorder, there are "paragraph A" criteria, which set forth the disorder's specific medical characteristics, and "paragraph B" criteria, which set forth the functional limitations that the impairment must cause in order for the individual to be considered per se disabled. *See* 20 C.F.R. § 404, subpt. P., app. 1, § 12.00(A). For some disorders, there are also "paragraph C" criteria, which are to be considered in the alternative if the paragraph B criteria are not satisfied. *See id*. A claimant will be found disabled if her impairment fulfills the requirements set forth in paragraph A, and the requirements of either paragraph B or C, for the disorder in question.

SSR 96-8p, which mandates this "more detailed assessment," explicitly deals with determining residual functional capacity. At this stage, primary focus must be on "an assessment of an individual's ability to do sustained *work-related* physical and mental activities in a *work setting* on a regular and continuing basis." SSR 96–8p, Title II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1, 7 (SSA July 2, 1996) (emphasis added). Thus, what is most essential in this phase is evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. *See id.*, at *6.

*B.  Finding*s

ALJ Dombeck found that Golden has severe mental impairments consisting of depressive disorder and anxiety disorder. Among other things, he found that these impairments create moderate limitations on Golden's concentration, persistence, and pace as well as in her social functioning. (T. 19).

A consultative psychiatric examiner, Dr. Dennis Noia, Ph.D., also diagnosed Golden as having "Panic Disorder NOS," and opined that Golden appears to have difficulty dealing with stress. (T. 292). ALJ Dombeck made no specific finding regarding Golden's stress. He did not, however, affirmatively reject Dr. Noia's diagnoses, and his decision reflects that he generally afforded "great weight" to Dr. Noia's opinions on other mental health issues. (T. 22).

When ALJ Dombeck's articulated Golden's residual functional capacity, the only limitation contained therein and arguably relating to Golden's mental

impairments is a simple statement that she must work in occupations involving only "rote simple tasks." (T. 20).

C.  *Analysis*

ALJ Dombeck acknowledged that SSR 96–8p requires that mental residual functional capacity assessments require more detailed assessments itemizing various functions contained in broad categories found in paragraph B and paragraph C of the adult mental disorders listings 12.00 of the Listing impairments. (T. 20). His ensuing evaluation of Golden's residual functional capacity, however, fails to apply that Ruling. There is no itemization or other mention of various functions found in the adult mental disorders listing. Further, ALJ Dombeck's discussion of functional effects of Golden's mental impairments at the residual functional capacity state is *less detailed* than at preceding Steps 2 and 3. In his residual functional capacity discussion, he fails to even mention Golden's moderate difficulties in social functioning and in concentration, persistence or pace, or to make any reference to functional effects of stress. (T. 20-22). Except for one passing reference to anxiety symptoms, ALJ Dombeck's entire discussion of residual functional capacity relates to Golden's *physical* abilities. (T. 20-22). Simply stated, ALJ Dombeck's decision does not reflect that he engaged in *any* further assessment of functional effects of Golden's mental impairments beyond determinations previously made at Steps 2 and 3 under the "special technique."

Nor does ALJ Dombeck assess Golden's mental residual functional capacity in terms of limitations, if any, on customary *work activities*, *i.e.*, understanding, carrying out, and remembering instructions; using judgment in making work-related decision; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work

setting.  *See* SSR 96-8p, 1996 WL 374184, at *6.  Given these conspicuous omissions, a reviewing court must conclude that ALJ Dombeck's mental residual functional capacity assessment does not comply with SSR 96-8p unless his bare, single limitation for "rote simple tasks" adequately satisfies its requirements.

Diligent research fails to disclose judicial precedent supporting such a conclusion.  Clear weight of authority suggests just the opposite  *See Thompson v. Astrue*, No. 10–CV–6576 CJS, 2012 WL 2175781, at *14-15 (W.D.N.Y. May 30, 2012) (when making residual functional capacity finding, an administrative law judge may not avoid conducting such a detailed assessment by merely indicating that the claimant can perform simple, unskilled work).

The Commissioner specifically counsels against such shortcut measures when dealing with mental impairments.  In SSR 85–15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK THE MEDICAL–VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *4-6 (SSA 1985), the Commissioner emphasizes the importance of thoroughness in evaluation on an individualized basis.  The Ruling states that "[a] claimant's condition [due to mental illness] may make performance of an unskilled job as difficult as an objectively more demanding job." *See id.*, at *6.  The Ruling elucidates that mentally impaired individuals' reactions to demands of work are highly individualized, and that in some cases, they have difficulty meeting requirements of even low stress jobs.  *Id*.  Accordingly the Ruling directs that (a) administrative law judges make *particularized findings* about the nature of a claimant's stress, circumstances that trigger it, and how those factors affect ability to work, and (b) *every impairment-related limitation* created by an individual's response to demands of work be *reflected in the residual functional capacity assessment.  See id*.  And, of apparent relevance here, the

Ruling states that "[t]he decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. This decision requires careful consideration of the assessment of RFC." *Id.*, at *4.

While this Ruling specifically applies to Step 5 findings, its general import is clear: catch-all, shortcut generalizations do not adequately account for functional effects of mental impairments. Rather, they must be assessed through particularized findings with explanations clear to the individual and to any subsequent reviewers.

For all these reasons, ALJ Dombeck erred in failing to comply with SSR 96-8p when making his mental residual functional capacity determination.[6]

## V. Nature and Effect of the Error

*A.   Correct Principles of Law*

ALJ Dombeck erred in failing to comply with requirements for assessing mental residual functional capacity as contained in a social security ruling. Rulings are published under the authority of the Commissioner of Social Security, and represent precedent final opinions and orders and statements of agency policy. 20 C.F.R. § 402.35(b)(1); *see also Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013); *Pullum v. Astrue,* 675 F. Supp.2d 299, 311 n.8 (W.D.N.Y. 2009); *F.M. v. Astrue*, No. 08–CV–4430 (CPS), 2009 WL 2242134, at *7 n.17 (E.D.N.Y. June 27, 2009).

---

[6]   This conclusion should not be construed as an expression that purely technical or formatting flaws constitute legal error. Reviewing courts cannot expect or demand perfection or adherence to rigid form in administrative decisions. Administrative law judges do not necessarily err by failing to include a section specially designated "more detailed assessment" in their decisions. Nor is it an absolute requirement that such more detailed assessment occur within a section of a decision articulating a formal finding regarding residual functional capacity. What is necessary, however, and what is lacking here, is that there be such an assessment or its analytical equivalent *somewhere*.

"[Rulings] are binding on all components of the Social Security Administration." *See* 20 C.F.R. § 402.35(b)(1); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (Social Security Rulings are binding on "all components of the Social Security Administration")). However, they lack the force of law, and are not binding on courts. *Heckler*, 465 U.S. at 873 n. 3; *see also Capitano v. Secretary of Health & Human Servs.*, No. 836231, 1984 WL 63640, at *1 (2d Cir. Aug.17, 1984) (Social Security Rulings are considered "interpretive and not binding on this court"). Given this anomaly, it does not automatically follow, therefore, that ALJ Dombeck's disregard of SSR 96-8p constitutes failure to apply correct principles of *governing* law, or an error of such magnitude as to warrant reversal.

Social Security Rulings, although lacking *ipso jure* force of law, often are consulted and adopted as expressions of correct legal standards when the statute provides little guidance. *See Connor v. Chater,* 947 F. Supp. 56, 61 (N.D.N.Y. 1996) (agency's interpretation of an ambiguous statute is entitled to substantial deference). The Social Security Act undoubtedly requires administrative expertise to interpret and implement.[7] Thus, courts generally uphold the Commissioner's interpretation as long as it is a permissible interpretation of the Act . *White v. Shalala,* 7 F.3d 296, 300 (2d Cir. 1993) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). In other words, Social Security rulings are entitled to deference unless they are plainly erroneous or inconsistent with the Social Security Act. *Genier v. Astrue*, 298

---

[7] The United States Supreme Court has recognized that "[t]he Social Security Act is among the most intricate ever drafted by Congress." "Its Byzantine construction . . .makes the Act 'almost unintelligible to the uninitiated.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (quoting *Friedman v. Berger*, 547 F.2d 724, 727, n.7 (2d Cir. 1976), *cert. denied*, 430 U.S. 984 (1977)). "Perhaps appreciating the complexity of what it had wrought, Congress conferred on the [Commissioner] exceptionally broad authority to prescribe standards for applying certain sections of the Act." (*Id.*) (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977)).

Fed. App'x 105, 108 (2d Cir. 2008) (Summary Order) (citing *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996)).

The Social Security Act provides no explicit guidance on the subject of residual functional capacity. Formally-promulgated, implementing regulations – which do carry force of law – (a) prescribe a special technique for evaluating severity of mental impairments and (b) require that administrative law judges determine claimants' physical and mental residual functional capacities for work activities. *See* 20 C.F.R. §§ 404.1520a(b)-(e), 404.1545(a)(1), 404.1545(b)-(c). SSR 96-8p is a permissible construction of both the statute and implementing regulations for assessing functional effects of mental impairments.[8]

Therefore, SSR 96-8p is entitled to deference as embodying governing law, and ALJ Dombeck's disregard thereof constitutes failure to apply correct principles of law.[9]

---

[8] Representative cases construing affording deference to SSR 96-8p as a statement of correct principles of law are: *See Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) (remanding where administrative law judge failed to follow SSR 96-8p and provide specific assessment of applicant's capacity to stand, walk, push, or pull despite conflicting medical evidence about those functions); *Bladow v. Apfel*, 205 F.3d 356, 360 (8th Cir. 2000) (the court remanded in light of SSR 96-8p's requirement of stating the individual's capacity to perform the strength demands on a "regular and continuing" basis because the ALJ had failed to follow the ruling); *Lanclos v. Apfel*, No. 99-35563, 2000 WL 1054893, *3 n. 3 (9th Cir. 2000) (remanded in light of this ruling); *McMullen v. Astrue*, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because residual functional capacity assessment failed to follow requirements of SSR 96-8p in assessing RFC requirements); *Brown v. Barnhart*, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr. 15, 2002) ("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence.").

[9] Other representative cases recognizing social security rulings as statements of correct legal principles, violations of which result in reversals, are: *Ginsberg v. Astrue*, No. 05 CV 3696, 2008 WL 3876067, at *10 (E.D.N.Y. Aug. 18, 2008) (remand due to the administrative law judge's incorrect interpretation and application of SSR 99-2p); *Persica v. Barnhart*, 420 F. Supp.2d 62, 73, 75 (E.D.N.Y. 2006) (remand appropriate where administrative law judge's decision
(continued...)

### B. *Substantial Rights*

The question remains, however, as to whether such error is prejudicial. Congress directs courts, when reviewing acts of administrative agencies, to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights"). Hence, an overarching and concluding duty in this action is to consider whether the above error is harmless under the circumstances. If so, the Commissioner's decision must stand irrespective of errors and defects.

This is not such a case. Without factoring Golden's moderate limitations on concentration, persistence, pace and social functioning into her residual functional capacity, ALJ Dombeck found at Step 4 that Golden can still perform her past relevant work as a grommet machine operator. ALJ Dombeck compared that work to the position of an "eyelet-machine operator" as listed in the *Dictionary of Occupational Titles*, Code 699.685-018.[10] That listing, however,

---

[9](...continued)
denying benefits is not consistent with SSR 99-2p, and is therefore based upon an erroneous legal standard); *see generally Green-Younger v. Barnhart*, 335 F.3d 99, 107-108 (2d Cir. 2003) (decision denying benefits where the administrative law judge did not follow a relevant Social Security Administration Memorandum explaining the signs for fibromyalgia was based on "an erroneous legal standard").

[10] The *Dictionary of Occupational Titles*, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work.

With respect to occupation of eyelet machine operator, the *Dictionary of Occupational Titles* provides alternate titles: Button Bradder; Button Clamper;
(continued...)

indicates that such job customarily requires "working at a production rate pace." Evidence of moderate difficulties in maintaining pace and dealing with stress are not superfluous. It is impossible, therefore, for a reviewing court to conclude that ALJ Dombeck would have come to the same Step 4 conclusion, *i.e.*, that Golden can still perform such work, had her mental-impairment limitation of moderate difficulties in concentration, persistence, pace and social functioning been factored into her mental residual functional capacity.[11]

Similarly, a reviewing court cannot conclude that ALJ Dombeck inevitably would have come to the same, alternative Step 5 conclusion that Rule 202.13 of the Medical-Vocational Guidelines could be used as a framework for deciding that alternative available work exists. That alternative finding is shaky to begin with, being premised on pure *ipse dixit* that Golden's "additional [nonexertional] limitations have little or no effect on the occupational base of unskilled light work." (T. 23). How ALJ Dombeck reached that conclusion is unrevealed in his decision. Given that embedded, ambiguous and otherwise unsupported statement, a court cannot confidently predict that ALJ Dombeck could or would

---

[10](...continued)
Button Riveter; Eyelet Maker; Eyelet Riveter; Eyeletter; Grommet-Machine Operator; Grommet Maker. *See Dictionary of Occupational Titles*, Code 699.685-018, 1991 WL 678863(4th ed. 1991).

[11] Psychiatric consultative examiner, Dennis Noia, Ph.D.'s medical source statement contained relevant information concerning Golden's residual work capacity:

> [t]he claimant appears to be capable of performing simple and some complex tasks with supervision and independently; she appears to be capable of maintaining attention and concentration for tasks; she can regularly attend to a routine and maintain a schedule; she appears to be capable of learning new tasks; she appears to be capable of making appropriate decisions; she appears to be able to relate to and interact moderately well with others; she appears to be having some difficultly dealing with stress.

(T. 19). Such statement, however, is silent with respect to Golden's capacity to maintain a production pace, and it notes, but does not quantify Golden's ability to deal with stress.

have again relied on Rule 202.13 without benefit of evidence from a vocational expert or similar source had he specifically factored Golden's mental-impairment limitations of moderate difficulties in concentration, persistence, pace and social functioning into her residual functional capacity assessment.

In absence of ability to conclude affirmatively that Golden's application would have been decided the same way had the legal error in assessing her mental residual capacity not occurred, a reviewing court must conclude that the error resulted in prejudice. As such, reversal and remand are appropriate.

## VI. Remaining Points of Error

Golden's remaining points of error relate to ALJ Dombeck's improper assessment of credibility, findings regarding her ability to perform past relevant work, and the alternative use of the grids at Step 5. Each point proffers non-frivolous arguments. These need not be addressed on their merits because the outcome of this case will not change whether they are sustained or rejected.

On remand, nevertheless, the Commissioner should reflect on all errors asserted in this action as set forth in Section III. Addressing those additional issues on remand may reduce the potential for a second costly and lengthy action for judicial review.

## VII. Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings in accordance with this recommendation.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   28   day of     August     2013.

Earl S. Hines
United States Magistrate Judge